## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**In re:**

| | | |
|---|---|---|
| **GEORGE A. JOHNSON and** | ) | |
| **MELANIE RANEY-JOHNSON,** | ) | |
| | ) | **Case No. 15-2631-JAR** |
| | ) | |
| **Debtors.** | ) | |
| _____ | ) | |
| | ) | |
| **GEORGE A. JOHNSON and** | ) | |
| **MELANIE RANEY-JOHNSON,** | ) | |
| | ) | |
| **Plaintiffs/Appellees,** | ) | **Bankruptcy Case No. 11-23108** |
| | ) | **Adversary No. 11-6250** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **EDUCATIONAL CREDIT** | ) | |
| **MANAGEMENT CORPORATION,** | ) | |
| | ) | |
| **Defendant/Appellant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM ORDER AND OPINION</u>

Educational Credit Management Corporation ("ECMC") appeals the order and judgment of the bankruptcy court determining that repayment of the student loan debt owed by debtors George and Melanie Johnson (collectively, the "Johnsons," or "Debtors") would constitute an undue hardship, and therefore was dischargeable under 11 U.S.C. § 523(a)(8). Having reviewed the record and the applicable law, the bankruptcy court's order and judgment are vacated and remanded for further proceedings consistent with this opinion.[1]

---

[1]The parties have not requested oral argument, and upon examining the briefs and record on appeal, the Court has determined that oral argument would not significantly assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019. The case is therefore ordered submitted without oral argument.

## I.    Appellate Jurisdiction

The Appellant has elected to have the appeal heard by this Court.[2]  The appeal was timely filed by the Appellant, and the bankruptcy court's order is "final" within the meaning of 28 U.S.C. § 158(a)(1).[3]

## II.    Standard of Review

In reviewing a bankruptcy court's decision, this Court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling.[4]  "The Tenth Circuit follows the established principle that a district court "review[s] the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard.""[5]  In this case, the Court reviews the bankruptcy court's factual findings regarding Debtors' financial situation for clear error, and reviews *de novo* whether those findings constitute undue hardship pursuant to 11 U.S.C. § 523(a)(8).[6]  An appellate court must consider evidence presented to the trial court in a light most favorable to the prevailing party, especially where the fact finder was, as here, the court rather than the jury.[7]  "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, the court is left with the

---

[2]*See* 28 U.S.C. § 158(c)(1).

[3]*See* Fed. R. Bankr. P. 8001–8002.

[4]28 U.S.C. § 158(a).

[5]*Conoco Inc. v. Styler (In re Peterson Distrib. Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996); *see also, e.g., Carter-Waters Okla., Inc. v. Bank One Trust Co., N.A. (In re Eufaula Indus. Auth.)*, 266 B.R. 483, 487–88, 490–91 (B.A.P. 10th Cir. 2001); *In re QuVIS, Inc.*, 469 B.R. 353, 365 (D. Kan. 2012).

[6]*Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir. 2005).

[7]*Id.* (citing *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 510–11 (10th Cir. 1985)) (such findings are "presumptively correct").

definite and firm conviction that a mistake has been made."[8]  "[T]he trial court's decision need

only be 'permissible,' not 'correct.'"[9]  If the bankruptcy court's account of the evidence is

plausible in light of the record viewed in its entirety, the district court may not reverse it even

though it may have weighed the evidence differently.[10]  "Where there are two permissible views

of the evidence, the fact finder's choice between them cannot be clearly erroneous."[11]  Finally,

determinations made on the basis of the credibility of a witness are given great deference by

appellate courts.[12]

## III.    Statement of Facts[13]

Debtors George and Melanie Johnson financed their higher education, in part, through

federally guaranteed student loans that they later consolidated into a spousal consolidation loan

in 2005 ("the Loan").  George has a B.A. in sociology from the University of St. Mary's, and

Melanie left school one class short of earning a degree in biology from University of California-

Davis.  ECMC, a guarantor in the Federal Family Educational Loan Program ("FFELP"), is the

holder of the Johnsons' outstanding Loan.

Acting pro se, the Johnsons filed for Chapter 7 bankruptcy protection on October 6,

---

[8]*In re Yellow Cab Co-op. Ass'n*, 132 F.3d 591, 597 (10th Cir. 1997) (quoting *Conoco*, 82 F.3d at 959).

[9]*In re Wagner*, 527 B.R. 416, 429 (B.A.P. 10th Cir. 2015) (quoting *Bill's Coal Co. v. Bd. of Pub. Utils. of Springfield*, 887 F.2d 242, 244 (10th Cir. 1989)).

[10]*In re Blinder, Robinson & Co.*, 124 F.3d 1238, 1241 (10th Cir. 1997).

[11]*Id.* at 1241.

[12]*In re Wagner*, 527 B.R. at 432 (citing *Vaughn v. United States (In re Vaughn)*, 765 F.3d 1174, 1180 (10th Cir. 2014); *see also* Fed. R. Civ. P. 52(a)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7052 (requiring appellate court to give due regard to trial court's opportunity to judge witness credibility).

[13]The factual matters set forth herein are taken from the bankruptcy court's Memorandum Opinion and Order set forth in the Record on Appeal, Doc. 3 at 36, and from uncontested or unrebutted testimony and documents presented at the September 13, 2013 adversary proceeding, *id.* at 60.

2011, and listed $73,010 in student loan debt, which constituted approximately 82% of their total

unsecured debt.  The Loan was incurred during the 1990s, and initially had a balance of

approximately $63,000.[14] During the eight years the Loan was in repayment, the Johnsons paid a

total of $2,440 from August 2005 until May 2006, and thereafter requested numerous deferments

and forebearances.[15]  With the accrual of interest and multiple years of nonpayment, the

outstanding balance on the Loan had increased to approximately $83,000 at the time of trial.[16]

On November 10, 2011, the Johnsons brought an adversary proceeding, seeking

discharge of the Loan.[17]  Bankruptcy Judge Robert D. Berger presided over a one-day bench trial

on September 13, 2013.  At the time of trial, George Johnson was thirty-nine years old, and

Melanie Johnson was thirty-seven years old.  At the hearing, the Johnsons testified about their

financial situation, earning opportunities, and lifestyle.  Neither has any mental of physical

disabilities that keep them from working.  The Johnsons have three children, ages eleven, eight,

and five.  One of the children has asthma, and another has orthodontia.  In 2008, they moved to

Kansas from California to help George's father, who was ill.  At that time, George's uncle

loaned them $10,000 for moving expenses.

Melanie Johnson works full-time at the Veteran's Administration (the "VA") as a billing

supervisor, making approximately $40,000 per year.   At the time of trial, her adjusted net

income was $2,124.00 per month after payroll deductions.[18]  In November 2012, George Johnson

---

[14]Trial Tr. at 31.

[15]*Id.* at 33–34.

[16]*Id.* at 32.

[17]Sallie Mae, Inc. was dismissed as a defendant in the adversary proceeding.

[18]Trial Ex. L.

was laid off from his position as a youth counselor at The Guidance Center, where he made approximately $27,000 per year, or net take home pay of $2,010.00 per month. He was unemployed at the time of trial, working occasionally as a substitute teacher, coach, and referee, with a total income for 2013 of approximately $1100.00   The Johnsons fully expect Mr. Johnson will find employment, and he applied for five to ten jobs per month in 2013.

The Johnsons also testified about their monthly expenses and spending habits.  As detailed in their responses to interrogatories and on their Schedule J, the bankruptcy court found their total monthly expenses in 2012 were approximately $3922, after subtracting $100 allocated to repayment of the personal loan to George Johnson's uncle.

Based on their 2012 adjusted gross income ("AGI") of $60,000, the Johnsons were eligible for a monthly payment of $234 paid over a twenty-five-year period under the Income Based Repayment plan ("IBR").  The Johnsons did not pursue the IBR option, explaining that they were not aware of the IBR until shortly before the trial and had not applied.  At the hearing, Melanie Johnson explained that they did not wish to consider the IBR because her oldest child would be starting college in six years and with three kids in college, it would be hard to "scrape by."  She was also concerned that the IBR payments might increase in the future, with a cap at over $800 per month.  Instead, both Debtors testified, they preferred a "fresh start," with a full discharge of the Loan.  At the end of the hearing, counsel for ECMC explained that if the Debtors' income got down to a low enough number, they might be in a position that the monthly payment may pay off the balance and not require a twenty-five year period.

IV.     **Discussion**

Section 523(a)(8) of the Bankruptcy Code states that a Chapter 7 discharge does not

discharge an individual debtor from any debt "for an educational . . . loan made, insured or

guaranteed by a government unit . . . unless excepting such debt from discharge under this

paragraph will impose an undue hardship on the debtor and the debtor's dependants[.]"[19]  To

determine what constitutes "undue hardship," the Tenth Circuit has joined several other circuit

courts in adopting the three-part test set forth in *Brunner v. New York State of Higher Education*

*Services*:

> (1) that the debtor cannot maintain, based on current income and
> expenses, a "minimal" standard of living for herself and her
> dependents if forced to repay the loans; (2) that additional
> circumstances exist indicating that this state of affairs is likely to
> persist for a significant portion of the repayment period of the
> student loans; and (3) that the debtor has made good faith efforts to
> repay the loans.[20]

The debtor must prove all three elements by a preponderance of the evidence to be entitled to a

discharge.[21]  The Tenth Circuit explicitly cautioned that the *Brunner* test should not be applied in

a formulaic way, but instead "to advance the Bankruptcy Code's 'fresh start policy' and applied

in such a manner "such that debtors who truly cannot afford to repay their loans may have their

loans discharged."[22]  The Tenth Circuit has clarified that adoption of the *Brunner* test does not

"rule out consideration of all the facts and circumstances" surrounding the case.[23]

　　In this case, the bankruptcy court discharged all of Debtors' Loan based on its finding

---

[19]11 U.S.C. § 523(a)(8).

[20]*Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302, 1307 (10th Cir. 2004) (quoting *Brunner*, 831 F.2d 395, 396 (2d Cir. 1987)).

[21]*Id.*

[22]*Id.* at 1308–09.

[23]*Id.* at 1309.

that failure to discharge the student loan debts would impose an undue hardship on the Debtors. As a preface to its analysis, the court engaged in a general critique of the student loan system, noting the burden it poses on society and the "skyrocketing" costs of higher education. The court concluded that the "reality is that even if the Debtors' gross income were $60,000 per annum, providing for a family of five would be a Herculean task."

ECMC contends that the bankruptcy court's decision to discharge the Loan was improper, and takes issue with a number of the factual findings made by the court with regard to the *Brunner* factors. The Court discusses ECMC's arguments in turn.

A.      **Ability to Maintain Minimal Standard of Living**

Under the first prong, the Court must "evaluate the debtor's current financial situation" and "take into consideration whether the debtor has demonstrated any reason why he or she is unable to earn sufficient income to maintain him/herself and dependants while repaying the student loan debt."[24] This first prong requires Debtors to demonstrate "more than simply tight finances."[25] The Court requires "more than temporary financial adversity, but typically stops short of utter hopelessness."[26] "A minimal standard of living includes what is minimally necessary to see that the needs of the debtor and [his] dependents are met for care, including food, shelter, clothing, and medical treatment."[27] This "necessarily entails an analysis of all relevant factors, including the health of the debtor and any of his dependents and the debtor's

---

[24]*In re Alderete*, 308 B.R. 495, 503 (B.A.P. 10th Cir. 2004).

[25]*In re Buckland*, 424 B.R. 883, 889 (Bankr. D. Kan. 2010) (quoting *Innes v. Kansas (In re Innes)*, 284 B.R. 496, 504 (D. Kan. 2002)).

[26]*Id.*

[27]*Id.*

education and skill level."[28]  Further, a court should also be "hesitant to impose a spartan life on family members who do not personally owe the underlying student loan, particularly when those family members are children."[29]

With regard to this inquiry, the bankruptcy court found that "the record establishes that Debtors barely maintain a minimal standard of living, even without repaying the Loan."  The court noted that Debtors' projected expenses were actually too low, and did not include adequate budgeting for items such as household maintenance, car repair expenses, or unforeseen medical expenses.[30]  Notably, the court was willing to overlook the Johnsons' inaccurate schedules, concluding that they would either be forced to redirect their seemingly unnecessary expenditures toward inevitable life expenses or incur debt by using credit cards or borrowing against Melanie's retirements savings.  The court further found that "[u]nder the appropriate circumstances, Melanie's union dues, retirement contributions, and loan repayment, which are voluntary expenses that do not immediately affect a debtor's standard of living, are nevertheless necessary to maintain a minimal standard of living if the payments were instead applied to repay a student loan."  The court took judicial notice of the Great Recession and "the lumbering recovery of the United States' economy and slow growth since 2008," and concluded that "[t]hese Debtors truly cannot afford to repay the loan."

ECMC contends that this finding was erroneous and points to a number of what it characterizes as "gratuitous items" in Debtors' spending history, including multiple sports

---

[28]*Polleys*, 356 F.3d at 1309.

[29]*Buckland*, 424 B.R. at 889 (citing *Windland v. United States Dep't of Educ. (In re Windland)*, 201 B.R. 178, 182–83 (Bankr. N.D. Ohio 1996)).

[30]*Id.*

activities, frequent dining out, and a $200 monthly recreation budget.  ECMC also takes issue

with expenses related to the Johnsons' three children, such as food, birthday party gifts, sports

equipment and fees, clothing, and expenses for school trips, arguing that many of these expenses

are temporary and will gradually phase out as the children reach the age of majority.

It is undisputed, however, that at the time of trial George Johnson had been laid off from

his job and was bringing in next to no income to support the family.  When subtracted from the

bankruptcy court's estimated reasonable expenses of $3,922, the Debtors' available net monthly

income is negative $1,797.84.  Even assuming that the "gratuitous" items to which ECMC

objects are subtracted from their budget, at the time of trial, Debtors' budget was significantly in

the red.  Accordingly, the Court finds the bankruptcy court's findings on this factor are not

clearly erroneous.

### B.    Additional Circumstances

The second prong of the *Brunner* test requires that additional circumstances exist

indicating that the debtor will be unable to repay the loans while maintaining a minimal standard

of living for a significant portion of the repayment period, and "properly recognizes that a

student loan is viewed as a mortgage on the debtor's future."[31]  This factor does not require a

"certainty of hopelessness,"[32] but rather, requires a realistic look into the debtor's circumstances

and the debtor's ability to "provide for adequate shelter, nutrition, health care, and the like."[33]

The "additional circumstances requirement" recognizes that most every debtor in bankruptcy is

---

[31]*Polleys*, 356 F.3d at 1310 (internal quotation omitted).

[32]*Id.*

[33]*Id.*

strapped financially and that there must be something more than mere economic distress to

justify a finding of undue hardship.[34]  The second prong "requires an analysis of all the facts and

circumstances that affect the debtor's future financial position."[35]  Examples of exceptional

circumstances include illness, recent disability, or an exceptionally large number of dependants

that would hamper a debtor's ability to repay the student loan.[36]

The bankruptcy court concluded that this prong has been satisfied, noting again that the

Johnsons' projected monthly expenses for car payments, maintenance, and gasoline were

unrealistically low and would most likely be offset by future expenses.  The court found that

based on their income history and increasing costs of their family, "this state of affairs is likely

to persist for a significant portion of the Loan's repayment period."

Significantly, the bankruptcy court reasoned that the second prong does not apply to the

Johnsons because the court believed the ten-year repayment period of the Loan had already

expired.  The court explained,

> Absent refinancing or, in the alternative, a program for repayment,
> the standard student loan repayment term is ten years.  It might be
> argued that since the ten years has expired with respect to
> repayment of the Loan, this repayment period factor does not apply
> and any proposed total repayment plan should not exceed ten
> years.  This observation is sound because at the time *Brunner* was
> decided, student loans that had been in a repayment period for a
> [sic] more than five years were dischargeable and, by extension, all
> student loans for which debtors sought discharge under undue
> hardship had to be in the ten-year repayment period.  Of equal or

---

[34]*See, e.g., Educ. Credit Mgmt. Corp. v. Davis (In re Davis)*, 373 B.R. 241, 250 (W.D.N.Y. 2007) ("The type of additional circumstances contemplated by *Brunner* are well beyond those hardships that normally accompany any bankruptcy.").

[35]*Polleys*, 356 F.3d at 1309.

[36]*Alderete*, 412 F.3d at 1205.

greater force is that *Brunner* was decided at the time that all student loans were eventually dischargeable, subject to the five-year test. The *Brunner* test was developed when there were means other than undue hardship to discharge student loans under the Code.[37]

While stopping short of determining the bankruptcy court's findings on the second prong were clearly erroneous, the Court believes that *Brunner* and its progeny dictate a more searching inquiry. As ECMC notes, the bankruptcy court devotes scant analysis to the second prong and at best, concludes that the Johnsons' expenses will remain constant. While the bankruptcy court found that George Johnson is a healthy young male, and that he was optimistic about finding employment, the court failed to consider whether his unemployment constitutes an additional circumstance that is likely to persist into the future. Indeed, Mr. Johnson testified that the feedback he had received from potential employers was that he was overqualified for the positions for which he applied. Moreover, the court did not address Mr. Johnson's employment history, skills, and future earning potential—instead, its discussion was limited to Mrs. Johnson's employment and salary history with the VA. The court did not explore whether taking jobs in other fields was a possibility or might put Mr. Johnson in better financial standing.

ECMC also takes issue with the bankruptcy court's reasoning that the Johnsons met their burden or that prong two does not apply to them because the court believed the repayment period of the Loan had already expired—which it characterizes as a clearly erroneous fact not supported by the evidence. ECMC contends that when the Johnsons received their Loan in 2005, it was subject to a 30-year repayment term, which was further extended by multiple deferments and

---

[37]Doc. 3, at 52–53.

forebearances.[38]  The Court agrees that the accurate repayment period should be addressed and considered as well.

Given the record before it, the Court cannot say that the bankruptcy court was on solid ground in its determination that Debtors met their burden on the second *Brunner* prong. Accordingly, the Court remands for further analysis and clarification on whether George Johnson's unemployment is temporary, his future earning potential, and the correct repayment period of the Loan.

**C.     Good Faith**

Similarly, the bankruptcy court's analysis of this third prong also deserves closer scrutiny.  The third prong of the *Brunner* test requires the Court to consider whether the debtor has made a good faith effort to repay the student loan debt "as measured by his [or] her efforts to obtain employment, maximize income and minimize expenses."[39]  The inquiry into a debtor's good faith "should focus on questions surrounding the legitimacy of the basis for seeking a discharge."[40]  While a finding of good faith is not precluded by a debtor's failure to make a payment,[41] a debtor cannot satisfy the good faith prong if he has contributed to his hardship.[42]

The bankruptcy court found that "Debtors' small voluntary payments toward their loans, the consolidation of those loans, and the Debtors' efforts to stay in contact with the student loan

---

[38]*See* 34 C.F.R. §§ 682.209(h)(2)(vi); 682.210, 682.211.

[39]*In re Innes*, 284 B.R. at 510.

[40]*Polleys*, 356 F.3d at 1310.

[41]*In re Innes*, 284 B.R. at 510.

[42]*Polleys*, 356 F.3d at 1310; *In re Faish*, 72 F.3d 298, 305 (3d Cir. 1995) ("Undue hardship encompasses a notion that a debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his control.").

creditor establishes that they were acting in good faith." As noted by the bankruptcy court, a debtor's pursuit of loan consolidation is a component of the good faith analysis as it may demonstrate that a debtor takes the obligation to pay seriously and that he is doing what he can to repay despite his circumstances.[43]  But consolidation fails to carry the burden under this prong where no payments have been made and the record does not demonstrate an intention to pay.[44] Accordingly, without more, a debtor cannot demonstrate good faith efforts to repay student loans by seeking deferments, forbearances, and consolidation.[45]

Here, it appears that the Debtors qualify for the IBR, where the amount of monthly payments on the Loan is calculated based on their monthly income; if Debtors earn less than 100% of the federal poverty line (150% of the IBR), they would not be obligated to make any payments while that condition persisted, and after twenty-five years, any remaining debt would be forgiven.  The record indicates that ECMC calculated an IBR payment based on Debtors' 2012 AGI when both of them were working; although counsel indicated the payment would be income-based, there was no evidence of what the payment would be, if anything, while George Johnson was unemployed.  The bankruptcy court merely mentions in passing the IBR in its statement of facts, noting there were potential income tax concerns.  In *Alderete*, however, the Tenth Circuit held that failure to seriously consider these repayment alternatives is an important factor to consider in the good faith analysis.[46]  Following the *Alderete* decision, bankruptcy

---

[43]*See, e.g., In re Murphy*, 535 B.R. 97, 106 (Bankr. W.D. Pa. 2015).

[44]*Id.*

[45]*Id.*

[46]*In re Alderete*, 412 F.3d 1200, 1206 (10th Cir. 2005).

courts in the Tenth Circuit have acknowledged that a debtor's willingness to consolidate his loan

under the William D. Ford Federal District Student Loan Programs Income Contingent Plan

("ICRP") or IBR is an important factor to consider in determining whether a debtor has made a

good faith effort to repay a student loan debt.[47] Courts in other jurisdictions have similarly

recognized the importance of consideration of alternative loan repayment programs in

determining whether a debtor has made a good faith effort to repay.[48] Accordingly, the Court

remands for further consideration and clarification the impact of the IBR on the bankruptcy

court's good faith analysis.

## V. Conclusion

Although this Court's review of the ultimate issue of undue hardship is *de novo*, that

review must be predicated on an analysis that fully takes into account the record adopted by the

parties. It would be inconsistent with the Bankruptcy Code's goal of providing a "fresh start"

for qualifying debtors to eliminate from this analysis a debtor's potential earning capability after

a period of temporary employment, the term of repayment, and a program to restructure that debt

as factors in the undue hardship analysis.

Accordingly, in view of the heavily fact-dependent nature of the undue hardship inquiry,

the Court will vacate the judgment of the bankruptcy court and the case is remanded for further

---

[47]*See, e.g., In re Buckland*, 442 B.R. 883, 890 (Bankr. D. Kan. 2010).

[48]*See, e.g., Pa. Higher Educ. Assist. Agency v. Tirch (In re Tirch)*, 409 F.3d 677, 682 (6th Cir. 2005) (holding failure to take advantage of the ICRP is certainly probative of a debtor's ability to repay and is a "difficult, although not necessarily insurmountable burden" to overcome); *Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*; 464 F.3d 878, 885 (9th Cir. 2005) (stating failure to consider ICRP cut against finding of good faith); *Frushour v. Educ. Credit Mgmt.Corp. (In re Frushour)*, 433 F.3d 393, 402 (4th Cir. 2005) (explaining effort to seek out loan consolidation options that make the debt less onerous is an important component to the good-faith inquiry); *Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson)*, 571 F.3d 775, 781 (8th Cir. 2009) (eligibility for the ICRP an important consideration in the totality of the circumstances test for undue hardship).

proceedings to make more complete findings under the second and third factors under the *Brunner* test as discussed above. Of course, the bankruptcy court may reassess its views or reaffirm those already stated, with a more fully developed explanation; the Court leaves to the discretion of the bankruptcy court whether such an explanation requires the parties to supplement the record with additional evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that the bankruptcy court's Order and Judgment finding that Debtors' student loan is dischargeable under 11 U.S.C. § 523(a)(8) are VACATED and REMANDED to the bankruptcy court for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: March 1, 2016

                      S/ Julie A. Robinson
                      JULIE A. ROBINSON
                      UNITED STATES DISTRICT JUDGE